UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CHARLES JACKSON,** | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action Number |
| | ) 2:17-cv-00634-AKK |
| **WAL-MART STORES, INC., et al.,** | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Charles Jackson brings this products liability action after a tragic accident caused by an exploding gasoline container. Blitz, the manufacturer of the allegedly defective container, is now defunct, and Jackson seeks to recover instead from the container's purported distributor, Wal-Mart Stores, Inc. Wal-Mart has filed a motion to dismiss Jackson's claim, doc. 32, and that motion is now fully briefed, docs. 39; 42, and ripe for review. After carefully considering the Parties' briefs, Jackson's first amended complaint, doc. 31, and with the additional benefit of oral argument, the court finds that Jackson has failed to plead a plausible claim against Wal-Mart and that Wal-Mart's motion is due to be granted.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to comply with Rule 8(a)(2) or does not otherwise state a claim upon which relief can be granted. The court accepts the plaintiff's well-pleaded factual "allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.* 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 (explaining that "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level."). Ultimately, the line between possibility and plausibility is a thin one, and making such a determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**III. Facts**

On April 21, 2015, Charles Jackson attempted to burn a small pile of debris in his backyard. Doc. 31 at 10. After having difficulty getting the fire started, Jackson used his Blitz[1] gas container to pour gasoline directly onto the smoldering detritus. *Id.* at 4, 11. Unbeknownst to Jackson, the Blitz container lacked a flame arrestor, *id.*, a small, metal device placed over a gas container's nozzle to prevent catastrophic flashback explosions potentially caused by the ignition of fumes emanating from the gasoline. *Id.* at 5. Since the 1970s, manufacturers have used flame arrestors to prevent this serious danger. *Id.*

---

[1] Blitz filed for Chapter 11 bankruptcy relief on November 9, 2011 based, in part, on its legal exposure to consumers injured by exploding gasoline containers. Doc. 31 at 9–10. Wal-Mart, as one of the largest distributors of Blitz's products, voluntarily contributed about $25,000,000 towards a settlement fund designed to compensate those injured by exploding Blitz containers between July 2007 and July 2012. *Id.* at 10. This trust has since been dissolved. *Id.*

3

Without the presence of a flame arrestor, the burning debris pile ignited the poured gasoline's vapor-trial causing the container to explode and leaving Jackson covered in burning gasoline. *Id.* at 11. Jackson, with the help of his roommate and a neighbor, eventually managed to extinguish the flames, but not before he suffered second degree burns over 80% of his body. *Id.* at 11–12. As a result of his severe burns, Jackson has incurred more than $1,000,000 in medical expenses to date and will continue to require specialized medical treatment for the rest of his life. *Id.* at 12.

Jackson alleges that his father purchased the purportedly defective Blitz container sometime between 2007 and 2013 from a Wal-Mart located roughly 20 miles from Calhan, Colorado, a small town where his father presumably lived during this period. *Id.* at 9. After his father's death, Jackson acquired the Blitz container as the beneficiary of his father's estate. *Id.* Although Jackson has neither a receipt establishing that Wal-Mart sold the container at issue nor any other proof that his father actually purchased the gas container from Wal-Mart, he alleges that Wal-Mart *must have* sold the container because his father purchased "everything" from Wal-Mart while living in Calhan. *Id.* Jackson further points out

that Wal-Mart was the only store within 40 miles of his father's home where Blitz gas containers were sold. *Id.*²

Wal-Mart is the largest seller of plastic gas containers in the country and has been involved in the industry for decades. *Id.* at 4–6. Accordingly, Wal-Mart has frequently been involved in litigation involving Blitz and other gas can manufacturers, and has also allegedly conducted its own internal testing regarding the efficacy of flame arrestors in preventing flashback explosions. *Id.* at 6–7, 14–16. Purportedly, Wal-Mart previously rejected a Blitz gas container design featuring a flame arrestor resulting in the cancellation of that model of container. *Id.* at 20. Wal-Mart also purportedly declined to support a national campaign to raise awareness of the dangers posed by gas containers and, on at least two occasions, sought to increase its sales of Blitz containers without flame arrestors despite the potential risks they posed to consumers. *Id.* at 7–8.

## IV. DISCUSSION

In its motion to dismiss, Wal-Mart primarily argues that it is immune from liability pursuant to Alabama Code §§ 6-5-501 and 6-5-521, the Alabama Innocent Seller Act (the Act). Wal-Mart contends that the Act is intended to immunize distributors, like Wal-Mart, from products liability suits so long as the distributor served as a mere conduit for the sale of goods placed into the stream of commerce.

---

² Jackson also alleges that Wal-Mart sold more than 40 million Blitz gas containers without flame arrestors between 2002 and 2013. Doc. 31 at 8.

5

Additionally, Wal-Mart argues that Jackson's complaint fails to adequately allege that the Blitz gas container at issue in this case was actually purchased from the company. Because the court has determined that Jackson's complaint fails to allege a plausible claim against Wal-Mart, it declines to reach the state law immunity question.

### A. Jackson's Complaint Fails to Allege a Plausible Claim Against Wal-Mart

Under Alabama law, "the 'threshold requirement of any products liability action is identification of the injury-causing product and its manufacturer.'" *Sheffield v. Owens-Corning Fiberglass Corp.*, 595 So. 2d 443, 450 (Ala. 1992) (quoting *Marshall v. Celotex Corp.*, 651 F. Supp. 389, 393 (E.D. Mich. 1987)). That is, the plaintiff must prove "[she] suffered injury or damages . . . [caused] by one who sold a product in a defective condition." *Atkins v. Am. Motors Corp.*, 335 So. 2d 134, 141 (Ala. 1976); *see also Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) (explaining that "[i]n an [Alabama Extended Manufacturer's Liability Doctrine] action, the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product"). To carry this burden at the pleading stage, Jackson must allege sufficient factual content to allow the court to "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that his deceased father purchased the purportedly defective gasoline container from Wal-Mart. Jackson has failed to do so, and, as a result, his complaint is due to be dismissed.

As proof that Wal-Mart sold the gas can in question, Jackson alleges that his father purchased the container at Wal-Mart sometime between 2007 and 2013, and that Jackson inherited the can following his father's death. Doc. 31 at 9. Jackson supports this vague, conclusory allegation with three factual assertions: (1) Jackson's father "bought everything" from Wal-Mart while he lived in Calhan, Colorado; (2) Calhan is a small rural community, and Wal-Mart is the only retailer that sells Blitz containers within 40 miles; and (3) Wal-Mart is the nation's largest retailer of plastic gasoline containers and has sold over 40 million Blitz gas containers without flame arrestors between 2002 and 2013. *Id.* at 5, 8–9.[3] For purposes of this motion, the court assumes the veracity of these factual allegations, but, even assuming that all these facts are true, the court cannot say that Jackson has shown, as he must, "more than a sheer possibility that [Wal-Mart] has acted unlawfully." *Iqbal*, 556 U.S. at 678.

---

[3] Jackson further supports this allegation by claiming that either forensic testing, or "markings and/or numbers" on the Blitz container would identify Wal-Mart as the item's likely source. Doc. 31 at 9. This conclusory statement is totally devoid of factual content, and is not entitled to an assumption of truth. *See Iqbal*, 556 U.S. at 679. Further, as Wal-Mart points out, Jackson is currently in possession of the Blitz container, and he has maintained possession for roughly two years. To the extent that the container has markings, such as a serial number, that could plausibly link Wal-Mart to the product, Jackson should have established the existence of those markings through well-pleaded factual allegations. To the extent that forensic tests could establish that the container in question was indeed purchased at Wal-Mart, Jackson has had years in which to conduct those tests. He has failed to do so, and he has further failed to provide any factual specifics regarding the existence or veracity of such tests. Accordingly, this court will not "reserve ruling on the motion to dismiss in order to allow the plaintiff to look for what the plaintiff should have had—but did not—before coming through the courthouse doors." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007)

Jackson's entire case rests on the initial premise that his father bought the Blitz container while living in Calhan, Colorado, because it was during that time that the elder Jackson "bought everything" from Wal-Mart, the closest retailer selling Blitz containers. Doc. 31 at 9. However, it is undisputed that Jackson's complaint fails to provide any factual allegations directly supporting either of these assumptions. He does not have a receipt of purchase nor has he provided any other financial record of the transaction, such as a credit card or bank statement. Jackson does not allege his father told him that the Blitz container was purchased at Wal-Mart or while the elder Jackson lived in Calhan,[4] and the complaint does not indicate the existence of any other individual with first-hand knowledge of purchases during the relevant time-period. Moreover, although not dispositive here, Jackson cannot even specifically identify when the Blitz container was originally purchased. The six-year purchase window he proposes, which may have been the period his dad lived in Calhan, Colorado,[5] further underscores the speculative nature of Jackson's claim against Wal-Mart. *Id.* at 9.

---

[4] Based on oral argument, Jackson will not be able to say definitively that his dad did not own the gasoline container before he moved to Calhan.

[5] During oral argument, counsel for Jackson was unable to provide the court with any explanation for the significance of the alleged six-year purchase window identified in the complaint. Presumably this time period is necessary to Jackson's claim because it is the period when his father lived in a relatively isolated area near a Wal-Mart. However, counsel for Jackson also indicated his belief that Jackson's father had always lived in Calhan, a fact which is not alleged in the complaint and would appear to render the purchase window the complaint provides completely extraneous. In any event, this uncertainty further highlights the complaint's entirely speculative nature. Jackson lacks any specific knowledge regarding the provenance of

8

Of course, Jackson is correct to argue that the absence of any direct evidence of causation is not dispositive, and that Alabama law allows him to meet his causal burden "through circumstantial as well as direct evidence." *Strickland v. Royal Lubricant, Co.*, 911 F. Supp. 1460, 1470 (M.D. Ala. 1995) (quotation omitted); *see also Bell v. Colony Apartments Co.*, 568 So. 2d 805, 810 (Ala. 1990) (explaining that "proof of negligence may be established completely through circumstantial evidence"). He contends that his factual allegations establish the inference that Jackson's father must have purchased the Blitz container from Wal-Mart because the retailer frequently sold that type of container nationally, it was the closest retailer selling the containers to the rural town where Jackson's father lived,[6] and because Jackson's father always shopped at Wal-Mart while living in Calhan, Colorado. Doc. 31 at 8–9.[7] Moreover, as Jackson argues, these facts are consistent

---

the gasoline container at issue in this case and he is therefore is forced to rely on a purely hypothetical chain of inferences unmoored from any factual foundation.

[6] The court notes that Calhan, Colorado is not as isolated as Jackson suggests. According to Google Maps, it is only about 35 miles away from Colorado Springs.

[7] Jackson also seeks to buttress this contention with reference to a previous decision of this court, *Borum v. Werner Co.*, No. 5:11-cv-997, 2012 WL 2047678 (N.D. Ala. June 6, 2012), but this decision is of little help to him. It is true that in that case this court allowed a similar claim to proceed to trial based on purely testimonial evidence regarding the provenance of the allegedly defective product at issue. *Id.* at *9. However, the court emphasized in that case that its decision turned on the plaintiff's specific testimony regarding the source of the item in question. *See id.* The retailer offered contradictory testimony but no other concrete evidence, and, accordingly, the court was confronted with a question of material fact, not properly resolved on summary judgment. *Id.* Here, Jackson's complaint entirely lacks factual allegations allowing the court to draw the plausible inference that Wal-Mart was the source of the Blitz gas container. Even taken as true, the factual allegations contained in his complaint simply do not raise his claim to relief above a speculative level. There is no credibility issue for the court to resolve.

with Wal-Mart's liability and are therefore sufficient to carry his eventual burden of production at both summary judgment and at trial.

The court disagrees. As an initial matter, to have probative value under Alabama law, the circumstantial evidence put forward by the plaintiff must "reasonably tend[] to support inferences favorable to the [plaintiff] more than those unfavorable to that party." *Springfield Missionary Baptist Church v. Wall*, 993 So. 2d 469, 476 (Ala. Civ. App. 2008). And, more importantly at the pleading stage in federal court, Rule 8(a)(2) requires a complaint's well-pleaded facts to "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678. Jackson's complaint fails to make this showing. Specifically, over the six-year purchasing window alleged by Jackson, putting aside the possibility of an online purchase from a retailer like Amazon or the possibility that the purchase occurred before Jackson's father moved to Calhan, the elder Jackson likely had many opportunities to visit other major retailers, including Sears, Lowe's, K-Mart, and Home Depot, which all sell Blitz gasoline containers. Doc. 32 at 16 n.6.[8]

---

[8] Jackson suggests that it is more plausible that the Blitz container was purchased at Wal-Mart because he alleges that the company is the "nation's largest seller of plastic gas containers," but this fact, standing alone, is unhelpful. Doc. 31 at 5. While Wal-Mart might presently qualify as the nation's largest seller of plastic gas containers it may not have during the alleged purchase window. Or, perhaps, while Wal-Mart generally sells many more gas containers than other retailers, it sells fewer Blitz containers. Indeed, Wal-Mart could have sold the most Blitz containers at the relevant time, but by only a few hundred units as compared to many of its competitors. All of these inferences are as reasonable, based on the complaint, as the inference that Jackson wishes the court to draw–that Wal-Mart sold the most gas containers during the six-year window in question by a wide margin and so must have sold Jackson's father the container

Although Jackson alleges that his father "bought everything" at Wal-Mart while he was living in Calhan, doc. 31 at 9, this contention overlooks that the elder Jackson may have purchased the container from a different retailer in a different part of Colorado or in another state prior to 2007,[9] a fact which Jackson apparently agrees he cannot discount. Doc. 39 at 12–15. Or, as Wal-Mart points out, Jackson's father could have borrowed the gasoline container from someone who had originally purchased the item from a retailer other than Wal-Mart and then failed to return the container to that person before his death. Doc. 32 at 16.[10]

In short, a fair reading of Jackson's complaint reveals that he has no idea who originally purchased the Blitz gas container at issue in this case or when or where the purchase occurred. It is, of course, possible that Jackson's father purchased the container from Wal-Mart, but that conclusion amounts to pure speculation. *Twombly*, 550 U.S. at 555 (explaining that the plaintiff must provide sufficient factual detail "to raise a right to relief above the speculative level").

---

at issue here. The court simply has no concrete basis to enable it to infer Wal-Mart was the source of the container based on the conjectural pleading style employed by Jackson.

[9] As previously discussed, Jackson has presented no evidence at all to suggest that the Blitz container was actually purchased during the proposed time window between 2007 and 2013. Nor does Jackson himself allege that he had first-hand knowledge of the purchase, or even any basis to know when his father actually acquired the container.

[10] Jackson argues that this inference is not reasonable because there is no evidence that his father borrowed anything. Further, Jackson points out that if the container was borrowed, he would have returned it to its rightful owner after his father's death. Of course, there is no evidence Jackson's father purchased the Blitz container either. And, as the allegations in the complaint make abundantly clear, Jackson has no idea where the can originally came from and so he would have been unable to return it if it was, in fact, borrowed. Moreover, gas cans are inexpensive, easily replaced items, certainly not the sort of durable or sentimentally valuable consumer good someone is likely to insist be promptly returned.

Indeed, for a plaintiff to survive a 12(b)(6) motion to dismiss the complaint must contain facts that are more than "merely consistent with a defendant's liability," but that "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (quotations omitted).[11] Jackson is correct that he need only prove his claim by a preponderance of the evidence, but because the factual allegations in his complaint fail to allow the court to do more than infer "the mere possibility of misconduct," Jackson cannot show the entitlement to relief required to survive a motion to dismiss. *Id.* at 679. Contrary to Jackson's contention that he can flesh out these issues in discovery, including via engaging in "forensic" testing, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Accordingly, Jackson's complaint fails to state a claim upon which relief can be granted, and Wal-Mart's motion to dismiss is due to be **GRANTED**.

**DONE** the 22nd day of January, 2018.

							_____
							**ABDUL K. KALLON**
						UNITED STATES DISTRICT JUDGE

---

[11] The court agrees with Jackson that he need not prove with absolute certainty that his father purchased the Blitz gas container in question at Wal-Mart. Indeed, his claims require proof only by the usual civil standard, preponderance of the evidence. *See, e.g.*, *Borum*, 2012 WL 2047678, at *9 (N.D. Ala. June 6, 2012). Still, his complaint must provide more than pure speculation to survive a motion to dismiss in federal court.